IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:16-CR-201-L** |
| | § | |
| **ADAM JOSEPH SALINAS** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the Motion to Suppress Evidence (Doc. 26), filed by Defendant Adam Joseph Salinas ("Defendant" or "Salinas") on January 9, 2017; and Defendant's Second Motion to Suppress Evidence (Doc. 34), filed March 24, 2017. After considering the motions, responses by the Government, evidence, and applicable law, the court **grants in part and denies in part** the Motion to Suppress Evidence (Doc. 26) and **denies** Defendant's Second Motion to Suppress Evidence (Doc. 34).

## I.      Factual and Procedural Background

Defendant moves to suppress evidence of firearms and drugs seized by law enforcement during searches of his vehicle, apartment, and storage unit on three separate dates. Defendant also moves to suppress statements that he made to state and federal law enforcement officers on two different occasions. An indictment was originally filed in this case against Defendant on May 18, 2016. On the same date, an arrest warrant was issued for his arrest. Defendant was arrested on August 26, 2016, and ordered detained pending disposition of this case.

In the superseding Indictment ("Indictment") in this case, Salinas is charged in Counts 1, 4, and 6 with being a Convicted Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), as a result of events and searches that occurred on February 17, 2014; February 4,

2016; and August 26, 2016. In Counts 2, 3, and 7, Salinas is charged with Possession with Intent to Distribute Controlled Substances (methamphetamine and heroin) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), as a result of events and searches that took place February 4, 2016; and August 26, 2016. In Counts 5 and 8 of the Indictment, Salinas is charged with Using and Carrying a Firearm During and in Relation to, and Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), based on searches that occurred on February 4, 2016; and August 26, 2016.

## II.     First Motion to Suppress (Doc. 26)

### A.     February 17, 2014 Stop and Search of Defendant's Vehicle

Defendant moves to suppress evidence of the firearm seized by a Farmers Branch police officer during a traffic stop and warrantless search of his vehicle on February 17, 2014, which is the basis for the offense charged in Count 1. According to Defendant, the police offense report states "that [he] was stopped at a traffic light"; "that once the officer pulled in behind him, [he] put his turn signal on and turned east"; and "[t]he office[r] stopped [him] since he failed to signal his turn for 100 feet prior to turning." Def.'s Mot. 1. Defendant asserts that he did not commit a traffic violation because, before being pulled over, he was stopped at a traffic light and signaled before turning. Defendant contends that applying Texas Transportation Code section 545.104(b)'s one hundred feet signaling requirement to situations such as this, in which a vehicle operator fails to signal within the required distance before turning because he intended to proceed straight though an intersection but changed his mind and instead turned left or right after stopping at the intersection, would lead to an absurd result that the Texas State Legislature could not have possibly intended. Defendant, therefore,

contends that the firearm seized, without a warrant, from his vehicle on this date should be suppressed because there was no probable cause for the traffic stop.[1]

According to the Government, the police report of the traffic stop indicates that, when Defendant was encountered by law enforcement, his vehicle was stopped at an intersection behind several cars, and it was not until the officer pulled up behind Defendant's vehicle that he signaled and proceeded in a turn-only lane to turn left after the traffic light turned green. The Government contends that Defendant's hypothetical and argument, that section 545.104's signaling requirement does not apply to drivers who do not signal prior to stopping at an intersection because they intend to go straight through the intersection but change their minds, was rejected by the Texas Court of Appeals in *State v. Losoya*, 2015 WL 9594721, at *2 (Tex. App.—San Antonio, Dec. 30, 2015, pet. ref'd). The Government, therefore, contends that the traffic stop was proper because "there can be no question that the officer had reasonable suspicion to pull over Salinas." Pl.'s Resp. 10. The Government also argues that the good faith exception to warrantless stops applies even if the court determines that the officer lacked reasonable suspicion.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to traffic stops of vehicles, which are considered seizures for purposes of the Fourth Amendment. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005); *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). The legality of a traffic stop is analyzed under the two-part test in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013);

---

[1] Defendant does not present any arguments as to why the warrantless search of his vehicle was improper. He instead contends that the evidence seized should be suppressed because the officers lacked probable cause to stop his vehicle in the first instance.

*Lopez-Moreno*, 420 F.3d at 430. In analyzing the propriety of a traffic stop under *Terry*, the court first asks whether the officer's action in stopping the vehicle was: (1) initially justified at its inception by reasonable suspicion. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013). The court then determines "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Andres*, 703 F.3d at 832 (internal quotation marks omitted); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Andres*, 703 F.3d at 832. "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Lopez-Moreno*, 420 F.3d at 430. Reasonable suspicion can rest upon a mistake of law or fact if the mistake is objectively reasonable. *United States v. Alvarado–Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (citations omitted).

In assessing whether reasonable suspicion has been developed, the court takes into account "the totality of the circumstances," including the "collective knowledge and experience levels" of the officers involved and "must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Estrada*, 459 F.3d 627, 631-32 (5th Cir. 2006) (internal quotations omitted). A "mere hunch" is insufficient, but "'reasonable suspicion' need not rise to the level of probable cause." *Lopez–Moreno*, 420 F.3d at 430. The Government bears the burden of proving that the officer had objectively reasonable

suspicion for conducting the traffic stop. *See United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010).

Salinas's motion focuses on the first part of the *Terry* test. No evidence of the police report referenced by the parties was submitted by the Government, but Salinas does not dispute that he failed to signal his turn 100 feet before stopping at the intersection; and he does not question the officer's credibility. He instead contends that his conduct in signaling his turn after he stopped at the intersection but before proceeding to turn was not a violation of section 545.104 of the Texas Transportation Code. He also contends that this section should not apply when a person stopped at an intersection intending to go straight but changes his mind and decides to turn left or right. Because the pertinent facts that led to the stop are not disputed, the court's resolution of Defendant's motion regarding the validity of the February 17, 2014 traffic stop turns on its determination of whether the aforementioned undisputed facts constitute a violation of section 545.104.[2]

Section 545.104 provides: "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Tex. Transp. Code Ann. § 545.104(b). As correctly noted by the Government, Texas courts that have addressed the issue have held that signaling after stopping at an intersection but before turning is a violation of the statute. *See, e.g., Tucker v. State*, 183 S.W.3d 501, 508 (Tex. App.—Fort Worth 2005, no pet.); *Peterson v. State*, No. 01-14-00228-CR, 2015 WL 4549195, at *4 (Tex. App.—Houston [1st Dist.] July 28, 2015, no pet.) (mem. op.); *Taylor v. State*, No. 14-12-01041-CR, 2014 WL 1713895, at *1 n.1 (Tex. App.—Houston [14th Dist.] Apr. 29, 2014, pet. ref'd) (mem.

---

[2] The Government's response includes other details regarding the traffic stop on February 17, 2014, that are not supported by any evidence. In ruling on Defendant's motion regarding the February 17, 2014 stop, the court considers only the aforementioned facts that are not disputed by Defendant.

op.); *Lee v. State*, No. 06-07-00032-CR, 2007 WL 2274937, at *2-3 (Tex. App.—Texarkana Aug. 10, 2007, pet. ref d) (mem. op.). Accordingly, the court determines that Defendant's signaling after stopping at the intersection but before turning was a violation of section 545.104(b), and this conduct provided the officer with an objectively reasonable suspicion that illegal activity in the form of a traffic violation had occurred that justified the initial stop of Defendant's vehicle.

While the cases cited above do not address whether evidence of a vehicle operator's initial intent to proceed straight through an intersection and decision after stopping to turn at the intersection would dictate a different result under the statute, the court was unable to find any case interpreting the statute in this manner, and Salinas has not pointed to any such authority. Moreover, given the reluctance of Texas courts to carve out an exception to the one hundred feet signaling requirement for drivers who do not signal until after stopping at an intersection, the court seriously doubts that a driver's subjective intent and decision to turn only after stopping would change the way in which Texas courts have interpreted and applied this statute. Thus, even assuming, as Salinas contends, that he initially intended to proceed straight but changed his mind after stopping at the intersection, the court determines that his interpretation of section 545.104(b) is not supported by Texas authority. In light of this determination, the court **denies** Defendant's motion with respect to the traffic stop and search of his vehicle on February 17, 2014, and it need not address the Government's alternate good faith exception argument.

**B.      February 4, 2016 Stop and Search of Defendant's Vehicle**

Defendant moves to suppress evidence seized from his vehicle during a traffic stop conducted by Dallas police officers on February 4, 2016, which is the basis for the offenses charged in Counts 2, 3, 4, and 5.

### 1. Traffic Stop

Defendant asserts that he "was stopped for the traffic violation of having a 'burnt out license plate light'" and arrested for outstanding warrants. Defendant contends that Texas law requires a taillamp or separate lamp to be constructed and mounted to a vehicle to emit a white light that "(1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear." Def.'s Mot. 2 (quoting Tex. Transp. Code Ann. 547.322(f) (Vernon 1999) and *United States v. Alexander*, 589 F. Supp. 2d 777, 783 (E.D. Tex. 2008)). Defendant contends that "the Officer simply states that the purpose of the traffic stop was for a burnt out license plate light" but "fails to state whether that was sufficient for probable cause that [he] violated" section 547.322(f) of the Texas Transportation Code. Defendant, therefore, contends that the stop was unconstitutional.

In response, the Government expresses confusion regarding the basis for Defendant's contention regarding this traffic stop and contends that the stop was appropriate because: (1) the officer had "reasonable suspicion to believe that Salinas was violating [the] Texas Transportation Code by driving with a burnt-out license plate light"; and (2) Salinas "concedes that he was pulled over because the light above his license plate was burnt out, in violation of [section 547.322(f)." Pl.'s Resp. 11(citing Def.'s Mot. 2-3).

Generally, a defendant who seeks to have evidence suppressed bears the burden of proving by a preponderance of the evidence that the evidence was seized illegally. *See United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). When a search or seizure is conducted without a warrant, however, the Government has the burden to show that the search or seizure was constitutional. *Id.*; *United States v. Chavis*, 48 F.3d 871, 872 (5th Cir. 1995). It is undisputed that the traffic stop and search of Defendant's vehicle on February 4, 2016, was done without a warrant.

Accordingly, the Government bears the burden of proving by a preponderance of the evidence that the officer had reasonable suspicion to initiate the traffic stop.

Unlike the Government, the court does not read Defendant's argument regarding this traffic stop as a concession that he was "pulled over because the light above his license plate was burnt out, in violation of [section 547.322(f)]." *Id.* Salinas instead states that he "was stopped for the traffic violation of having a 'burnt out license plate light.'" Def.'s Mot. 2. Defendant then reiterates: "As stated above, the Officer simply states that the purpose of the traffic stop was for a burnt out license plate. It fails to state whether that was sufficient probable cause that [he] violated [section 547.322(f)] and therefore the traffic stop was illegal." *Id.* at 3. This does not appear to be a concession by Salinas that he had a burnt out license plate light or that his conduct violated section 547.322(f); rather, he simply conveys, without agreeing to it, what was communicated to him by the officer when he was pulled over or what the officer put in the citation or report as the reason for the initial stop.

Even if the court assumes that the asserted justification for stopping Salinas was "a burnt out license plate light," the Government does not point to or produce any evidence in the form of a citation, report, or otherwise, from which the court can determine whether the Dallas police officer had an objectively reasonable suspicion that Salinas had violated section 547.322(f). For example, the Government asserts that, "[o]n February 4, 2016, at approximately 2:00 a.m., law enforcement observed a truck (driven by Salinas) operating with a burnt-out license plate light." Pl.'s Resp. 3. Evidence that the traffic stop occurred at 2 a.m. would support an inference regarding the likelihood that the officer noticed Salinas was driving with a "burnt-out license plate light." *Id.* Without evidence, however, the Government's contention regarding the officer's observations and the time

of the observations amounts to nothing more than unsupported argument, which is insufficient to establish specific, articulable facts to warrant the traffic stop.

Accordingly, the Government has not met its burden of showing that the officer had reasonable suspicion to initiate the stop. For the reasons that follow, the court similarly concludes that the Government has failed to meet its burden with respect to the warrantless search of the vehicle that occurred on February 4 2016, after Salinas was stopped, such that neither can justify the search and seizure of evidence recovered from Defendant's vehicle on this date.

### 2. Warrantless Vehicle Search

Regarding the search of his vehicle, Defendant contends that, although he was arrested after being stopped for outstanding traffic warrants, the rationale behind authorizing a police officer to search a vehicle incident to an arrest does not apply here because: (1) he was handcuffed and placed in the officer's patrol car where he was secured and not within reaching distance of the passenger compartment of his vehicle; and (2) it was unreasonable for the officer to believe that he would find evidence of his offense (the outstanding traffic warrants) in his vehicle.

In responding to Defendant's motion, the Government does not rely on the incident to arrest exception to warrantless searches. It instead contends that suppression of the guns and drugs found in Defendant's vehicle is not warranted because, under the inevitable discovery doctrine, the guns and drugs would have been found during an inventory of the vehicle following Salinas's arrest for outstanding warrants. In this regard, the Government contends as follows:

> Here, Salinas was arrested because he had outstanding warrants, one of which was for possession of drug paraphernalia. He stopped his vehicle in a high-crime neighborhood making the vehicle susceptible to being burglarized. He was arrested for the outstanding warrants and his vehicle was towed as a result. Under Dallas Police Department's applicable policy, an inventory search of the vehicle would have

been conducted because it was towed. Accordingly, the police would have discovered the box containing firearms and drugs. Because the evidence would have inevitably been discovered during the course of an inventory, suppression is inappropriate.

Pl.'s Resp. 12. For support, the Government cites *United States v. Ochoa*, 667 F.3d 643, 650 (5th Cir. 2012).

Under the inevitable discovery doctrine, evidence initially seized improperly need not be suppressed if it would have been legitimately discovered pursuant normal police practices. *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010) (explaining that the inevitable discovery doctrine "renders the exclusionary rule inapplicable to otherwise suppressible evidence if that evidence would inevitably have been discovered by lawful means"); *United States v. Seals*, 987 F.2d 1102, 1108 (5th Cir. 1993). "The inevitable discovery doctrine applies if the Government demonstrates by a preponderance of the evidence that: (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Ochoa*, 667 F.3d at 650 (quoting *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008)). As noted, the Government argues that evidence seized from Salinas's vehicle would have been discovered during the lawful impoundment and inventory of his vehicle pursuant to Dallas Police Department procedure because he was arrested for outstanding warrants after being stopped.

The impoundment of a vehicle by police officers may be done to further "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles," and "automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *United States v. McKinnon*, 681 F.3d 203, 208 (5th

Cir. 2012) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976)). In determining whether the impoundment of a vehicle was proper, the court focuses on "the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681 F.3d at 208. The court's determination regarding the reasonableness of the vehicle impoundment is made "without reference to any standardized criteria," *id.*; however, resolution of this issue frequently turns on whether officers followed applicable local procedures established for impounding vehicles. *See, e.g, United States v. Ponce*, 8 F.3d 989, 995-96 (5th Cir. 1993) (footnote omitted) ("Furthermore, Officer Nichols' decision to impound the pickup truck did not contravene the Austin Police Department procedures. The procedures authorized impoundment when '[t]he operator has been arrested and there is no responsible adult present to immediately take custody of the vehicle.'").

An inventory search of a seized vehicle does not violate the Fourth Amendment if it is conducted pursuant to established standardized inventory regulations and procedures "that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *Seals*, 987 F.2d at 1107; *Ochoa*, 667 F.3d at 650.

In response to Defendant's motion, the Government has not come forward with any evidence to support its assertions that Salinas was arrested for outstanding warrants; that Salinas was stopped in a high crime neighborhood; or that impoundment of Salinas's vehicle was appropriate or necessary under the Dallas Police Department's procedures for impounding vehicles under the circumstances. There is also no evidence of the Dallas Police Department's procedures for impounding and inventory vehicles or evidence that would show that these procedures were

followed. For this reason, the court cannot say there is a reasonable probability that the contested evidence would have been discovered by *lawful means* as the result of an inventory search, and no other basis to avoid suppression of the evidence seized was offered by the Government. Accordingly, the court **grants** Defendant's motion to suppress with respect to the February 4, 2016 traffic stop and search of his vehicle.

### C.  February 9, 2016 Statements to ATF Agent

While in state custody after his arrest on February 4, 2016, Salinas met Special Agent Silverstrand ("SA Silverstrand"), a federal agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Defendant moves to suppress the statements he made during his meeting with SA Silverstrand under the exclusionary rule as fruit of the poisonous tree. Defendant contends that, but for the illegal traffic stop and search that occurred on February 4, 2016, he would not have been in custody, and SA Silverstrand would not have been able to interview him.

In support of its response, the Government submitted a transcribed copy of the recorded conversation between SA Silverstrand and Salinas and contends that the "but for" test alluded to by Defendant is not the law. According to the Government, the central question in applying the exclusionary rule is not whether evidence would have been discovered but for a constitutional violation, but instead whether the evidence is "derived from the exploitation of the illegality." Pl.'s Resp. 13 (quoting *United States v. Tovar*, 719 F.3d 376, 386 (5th Cir. 2013)). The Government contends that consideration of factors relevant to determining whether Salina's statements to SA Silverstrand were voluntary counsel in favor of not suppressing this evidence.

Regarding temporal proximity, the Government asserts that Salinas did not speak to SA Silverstrand until February 9, 2016, five days after his arrest on February 4, 2016. The Government

further states that "it appears from the [recorded and transcribed] interview [between Salinas and SA Silverstrand] that, between the time of his arrest and the interview, Salinas consulted with Tom Cox, a criminal defense attorney, regarding the arrest and the new charges." Pl.'s Resp. 14. The Government notes that SA Silverstrand is a federal agent and not the local police officer who conducted the traffic stop and search of his vehicle on February 4, 2016. Finally, the Government asserts that it is clear from the transcribed interview that Salinas spoke freely with SA Silverstrand, not because of any exploited illegality, but instead because he hoped that he could work off some of his anticipated federal time by currying favor with federal authorities.

"[T]he exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.'" *United States v. Hernandez*, 670 F.3d 616, 620-21 (5th Cir. 2012) (citation omitted). The "fruit of the poisonous tree" doctrine applies only to evidence "derived from the exploitation of an illegal search or seizure." *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) (citation omitted). When determining whether evidence should be suppressed under exclusionary rule, the issue is not whether the evidence would have been discovered "but for" a constitutional violation, but instead whether it is "derived from exploitation of the illegality." *Tovar*, 719 F.3d 376, 386 (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).

In determining admissibility evidence in the form of verbal statements, the court considers "the degree of free will exercised by the defendant and balances the cost of 'exclusion [that] would perpetually disable a witness from testifying about the relevant and material facts' against the need to deter unconstitutional conduct in the future." *Id.* at 387 (citing *United States v. Ceccolini*, 435 U.S. 268, 276-78 (1978)). Although Salinas was in state custody when he spoke to SA Silverstrand,

he does not contend that his statements were made involuntarily, that is, as a result of coercion or duress. *See Tovar*, 719 F.3d at 386; *see also Brown v. Illinois*, 422 U.S. 590, 604 (1975) ("The voluntariness of the statement is a threshold requirement."). Moreover, nothing in the transcript indicates that Salinas's decision to speak with the federal agent or the statements he made during the meeting with SA Sliverstrand was anything but voluntary. After *Mirandizing*[3] Salinas, SA Silverstrand advised Salinas that he did not have to talk to him, and, when asked if he was willing to talk, Salinas responded affirmatively, stated that he wanted to do whatever he could to help, and signed a written consent form before speaking to SA Silverstrand. Thus, the only question for the court to resolve is whether Salinas's statements to SA Silverstrand were a product of free will under the Supreme Court's analysis in *Wong Sun*. *See Tovar*, 719 F.3d at 386.

"[W]hether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive." *Brown*, 422 U.S. at 603. *Miranda* warnings are an important factor in determining whether a confession was obtained by exploitation of an illegal arrest, but it is not the only factor. *Id.* Other relevant factors include: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct." *Id.* at 603-04 (citations and footnotes omitted). The burden of establishing admissibility of the statements rests with the Government. *Id.* at 604 (footnote omitted).

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* "and its progeny in [the United States Supreme] Court govern the admissibility of statements made during custodial interrogation in both state and federal courts." *Dickerson v. United States*, 530 U.S. 428, 432 (2000). In *Miranda*, the Court recognized the Fifth Amendment's "prohibition against compelled self-incrimination require[s] that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). The accused, however, may "validly waive his rights and respond to interrogation" after receiving his *Miranda* warnings. *Id.* at 484.

The Government correctly notes that "actual consultation with counsel" would be a "demonstrably effective break in the chain of events" leading from an illegal arrest to a statement, but, according to the transcribed conversation, Salinas had only spoken to Cox about bonding out of jail but had not yet retained him, and it is unclear whether Salinas had actually consulted with Cox regarding legal matters pertaining to his situation. Thus, this fact is not dispositive. Consideration of other factors, however, leads the court to conclude that any taint of the traffic stop and search, and Salinas's resulting custody, was purged such that his statements did not derive from these events.

The transcript of the meeting shows that SA Silverstrand *Mirandized* Salinas before speaking to him. Further, it is undisputed that the meeting did not occur until five days after Salinas was arrested and taken into custody. Additionally, as correctly noted by the Government, SA Silverstrand is not the officer who conducted the traffic stop, search, and arrest of Defendant; rather, Defendant was stopped and ultimately arrested by an officer or officers with the Dallas Police Department. Moreover, it is clear from the transcribed meeting that Salinas was aware that SA Silverstrand was a federal agent with the ATF, who was not connected to the prior traffic stop, search, and arrest. Finally, at the time of this meeting, no federal indictment had been brought against Salinas. Accordingly, the court determines that the facts surrounding Salinas's statements on this date do not warrant suppression under the exclusionary rule. Defendant's motion to suppress his February 9, 2016 statements to SA Silverstrand on this ground is, therefore, **denied.** Defendant also moved in a second motion to suppress his statements to SA Silverstrand on another basis, which the court addresses separately below.

### D.        August 26, 2016 Search of Defendant's Apartment

Salinas moves to suppress statements he made and evidence seized from his apartment located at 1812 London Lane, #607, Arlington, Texas, during a search conducted on August 26, 2016, by North Richland Hills police officers. Salinas contends that the evidence, which forms the basis for Counts 6, 7, and 8, was unlawfully seized because the search and seizure were not done pursuant to a lawful warrant.  Salinas asserts that the search and seizure of evidence was unlawful because the affidavit made in support of the search warrant "fails to establish probable cause for the issuance of the warrant" and "fails to allege sufficient underlying facts to demonstrate that there was a fair probability that contraband or evidence would be found at the location."  Def.'s Mot. 5. Defendant further asserts:

> The sole basis for the search warrant is that U.S. Marshall Dustin Walker observed firearms and what appeared to be methamphetamine in plain view during a protective sweep. However, in the report authored by Marshall Walker, he stated he observed firearms and drug paraphernalia in the container. This is a significant distinction and questions the veracity of the affidavit.

*Id*. at 5-6.  According to Salinas, "the affidavit is insufficient in that without the language concerning Marshall Walker, there would have been no probable cause to issue the warrant."  *Id.* at 6.

The Government disagrees that the affidavit made in support of the search warrant and the report contain inconsistent accounts of the items observed in plain view by Deputy Marshal Walker ("Walker") during a protective sweep of the apartment and responds that Defendant has not met his burden of showing that the good faith exception does not apply.  The Government contends that, because Defendant failed to make a substantial preliminary showing that the affiant of the warrant, North Richland Hills Investigator Nelson ("Nelson"), made a false statement intentionally or with

reckless disregard for the truth, he is not entitled to an evidentiary hearing to avoid the good faith exception. The Government also contends that the warrant contained sufficient facts to establish probable cause because it states that Walker observed guns and drugs in and near the bedroom of Salinas, who was "under indictment for being a felon-in-possession of a firearm." Pl.'s Resp. 18.

In deciding a motion to suppress evidence obtained in a search conducted pursuant to a warrant, the court first determines whether the good-faith exception to the exclusionary rule applies. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003); *United States v. Pena–Rodriguez*, 110 F.3d 1120, 1129-30 (5th Cir.1997). If the good faith exception applies, the court "need not reach the question of probable cause for the warrant unless it presents a novel question of law, resolution of which is necessary to guide future action by law enforcement officers and magistrates." *Payne*, 341 F.3d at 399 (citation and internal quotation marks omitted). If the good-faith exception does not apply, the court determines whether "the magistrate had a substantial basis for . . . concluding that probable cause existed." *Pena–Rodriguez*, 110 F.3d at 1129-30.

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897, 921-25 (1984)). This is true even if the evidence in the affidavit on which the warrant was based was not sufficient to establish probable cause. *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000) (citing *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997)). When "probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained

from the search will not be excluded" under the good faith exception. *United States v. Looney*, 532 F.3d 392, 394 (5th Cir. 2008) (quoting *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002)).

"The issuance of a warrant by a non-biased magistrate is the 'clearest indication' that officers proceeded 'in an objectively reasonable manner, or as [courts] have sometimes put it, in 'objective good faith,' but the existence of such a warrant 'does not end the inquiry into objective reasonableness.'" *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). The good faith exception requires the court to determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Triplett*, 684 F.3d at 504. The good-faith exception does not apply:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Payne*, 341 F.3d at 399-400.

Salinas "questions the veracity of the affidavit" prepared by Nelson based on his contention that the description of Walker's observation of firearms and drugs in Nelson's affidavit differs from that included the description included in Walker's report. He contends further that, if the statements in the affidavit regarding Walker's plain view observations are excised from the affidavit, the remaining portion of the affidavit is insufficient to provide probable cause for issuance of the warrant.

When a defendant challenges the veracity of a sworn statement used by a police officer to obtain a search warrant, the court analyzes the challenge as follows:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Looney*, 532 F.3d at 394. If the defendant proves that one or more of the officer's statements in the affidavit are false, but "fails to prove that the affiant deliberately or recklessly included such false information in the affidavit, the court may consider the entire affidavit—without any excision—under the good-faith exception to the exclusionary rule." *Id.* (quoting *Cavazos*, 288 F.3d at 710).

According to Salinas, Nelson's affidavit states that Walker observed firearms and what appeared to be methamphetamine in plain view during a protective sweep of the apartment, whereas Walker states in his report that he observed firearms and drug paraphernalia in a container. Def.'s Mot. 6. In support of his motion, Defendant submitted a copy of Nelson's affidavit in which Nelson states that he spoke with ATF agent Garber on August 26, 2016, who requested assistance with a narcotics investigation at 812 London Lane, #607. Nelson states that he arrived at this address a short time later and learned from Walker that the United States Marshals Service had been attempting to execute an active Warrant for Felon in Possession of a Firearm against Salinas, who had been observed entering apartment #607. Nelson goes on to state that he "learned" that United

States Marshals had entered the apartment, secured the occupants of the residence, and conducted a protective sweep of the apartment for possible threats, and, during this sweep of the apartment, Walker "observed a large black box sitting on a table open, outside a room later identified as Salinas'[s]" According to Nelson's affidavit, Walker advised that:

> as he passed by he observed [the box] to contain a bag containing several pills/tablets, a stack of money that was wrapped in cellophane and a large plastic bag containing a white crystalline substance suspected be methamphetamine. Walker further advised that there were several handguns located on the bed in the bedroom later identified as Salinas'[s].

Def.'s Ex. A, Nelson Aff. (Doc. 26). Nelson explained that "Officers did not ask for consent to search the apartment due to the questionable circumstances of who actually had standing to give consent." *Id.* It was for this reason that he requested a warrant to search apartment #607 and seize methamphetamine, firearms, and other drug trafficking items described in his affidavit. *Id.*

Walker prepared an investigation report dated August 29, 2016. This is the report that Salinas appears to contend contains statements that are inconsistent with those in Nelson's affidavit. In actuality, it is Walker's report that contains the "plain view" language, not Nelson's affidavit, which states: "During the protective sweep of [Salinas's apartment] . . . USMS investigators observed multiple firearms and drug paraphernalia in plain view." Pl.'s Ex. A (Doc. 31-1).

After reviewing the affidavit by Nelson and Walker's report, the court concludes that Salinas has failed to meet his burden to show that Nelson made a false statement or misrepresentation intentionally or with reckless disregard for the truth in his affidavit. To begin, Nelson's and Walker's statements are not inconsistent or contradictory. Nelson's affidavit simply includes more factual detail regarding the plain view observation noted in Walker's report. Moreover, this difference is

not proof that the allegedly false statements in the affidavit were made by Nelson knowingly and intentionally, or with reckless disregard for the truth. Salinas has, therefore, failed to make a substantial preliminary showing that Nelson made a false statement or misrepresentation intentionally or with reckless disregard for the truth. As a result, it is unnecessary for the court to conduct an evidentiary hearing on this ground regarding Defendant's motion, *see United States v. Sibley*, 448 F.3d 754, 758-59 (5th Cir. 2006), and he is not entitled to avoid the good-faith exception on this ground.[4] Further, because the good faith exception applies, the court "need not reach the question of probable cause for the warrant," as it does not present a novel question of law. *See Payne*, 341 F.3d at 399. Accordingly, Defendant's motion to suppress statements made by him and evidence seized from his apartment on August 26, 2016, on this ground is **denied**.

### E. Statements by Salinas on August 26, 2016

Defendant contends that any statements by him, including any statement that the contraband found in the apartment belonged to him, should be suppressed because these and other statements by him were made while he was in custody and before he was *Mirandized*.

The Government argues in response that Defendant's voluntary, unprovoked statement claiming ownership of the contraband found in the apartment was not the result of interrogation and should not be suppressed because custodial statements are not *Miranda*-protected unless they are made as a result of interrogation by law enforcement. The Government, therefore, contends that suppression of Defendant's unprovoked statement to the effect that, "everything in there is mine, they don't know anything about it," is inappropriate.

---

[4] Salinas did not request a hearing on this or any other ground in his motion.

Statements made by a defendant during a custodial interrogation cannot be used by the prosecution unless law enforcement first informed the defendant of his rights and followed certain procedural safeguards. *Miranda*, 384 U.S. at 444. *Miranda* applies to custodial statements, whether inculpatory or exculpatory. *Id.* If the court finds that a defendant's statements occurred during a custodial interrogation, the Government must "establish that the accused in fact knowingly and voluntarily waived *Miranda* rights when making the statement" for it to be admissible. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010). Before the burden shifts to the Government to prove a valid waiver occurred; however, the defendant must first demonstrate that the statements he seeks to suppress were obtained while he was under custodial interrogation. *See United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984), *overruled on other grounds by United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988) (en banc)).

Salinas has offered no evidence to demonstrate that his statement regarding ownership of the contraband seized or any other statement by him on August 26, 2016, was obtained by law enforcement while he was under custodial interrogation. The court, therefore, **denies** his motion to suppress statements made by him on August 26, 2016, on this ground.

### F.     August 26, 2016 Search of Defendant's Vehicle

Defendant moves to suppress evidence that was seized from his vehicle on August 26, 2016, without a search warrant. Defendant contends that the search warrant for his apartment did not extend to his vehicle, which was parked and not going anywhere after he was arrested and taken into custody. Defendant asserts that the officers had ample time to obtain a warrant to search his vehicle,

and there were no exigent circumstances to justify a warrantless search even if the Government contends that the items were seized under the plain view doctrine.

The Government does not dispute that the warrant to search Salinas's apartment did not extend to his vehicle. The Government instead responds that the seizure of two firearms and magazines found inside the vehicle that Salinas was observed driving before entering his apartment was done pursuant to a proper *Cady* search because officers could plainly see from outside the vehicle that firearms were inside the vehicle, and securing the vehicle and its contents after Salinas's arrest was necessary and appropriate as part of the officers' community caretaking function to protect the public because the vehicle was parked in an apartment complex parking lot that was open to the public. Pl.'s Resp. 22 (citing *Cady v. Dombrowski*, 413 U.S. 433, 448 (1973)).

Under the Fourth Amendment, "[w]arrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'" *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001)). "Because a warrantless search is presumed to be unreasonable, the Government has the burden of proving that the warrantless search was conducted pursuant to an exception." *United States v. Riley*, 968 F.2d 422, 424-25 (5th Cir. 1992). One such exception is "community caretaking exception." *McKinnon*, 681 F.3d at 208. The community caretaking exception arises from the Supreme Court's opinion in *South Dakota v. Opperman*. *Id.* Although the Supreme Court, in *Cady v. Dombrowski*, extended the community caretaking exception to warrantless searches of vehicles, *see Cady*, 413 U.S. at 439, the Government argues but fails to point to or provide sufficient evidence to establish that the exception applies to the search and seizure of Salinas's vehicle on August 26, 2016.

Walker's August 29, 2016 report states that investigators followed Salinas to his apartment, where he exited the vehicle before entering the apartment. Walker's report also describes the firearms and drugs observed in plain view inside the apartment but says nothing about firearms being observed in plain view by officers from outside of Salinas's vehicle. Accordingly, Defendant's motion to suppress this evidence is **granted.**

### G. August 26, 2016 Search of Defendant's Storage Unit

Defendant moves to suppress evidence that was seized on August 26, 2016, during the search of his storage unit that was done pursuant to a warrant. Defendant contends that the search was unlawful because the affidavit made in support of the search warrant was a "bare bones affidavit" based on bare conclusions and did not give rise to probable cause to search the storage unit. Def.'s Mot. 7. In this regard, Defendant contends:

> There was no evidence in the affidavit that established the fair probability contraband would be found in storage unit. There was surveillance that day that tracked the Defendant entering and leaving the unit. However, there was no evidence in the affidavit stating that the Defendant left with any type of contraband, firearms, drugs, or was engaging in criminal activity to establish there was contraband in the storage unit. The affiant attempts rely on a statement from the Defendant that the storage unit was used by the him to facilitate his criminal activity but that statement was made over 4 months earlier.

*Id.*

The Government responds that the facts in the affidavit made in support of the warrant to search were not "bare bones" but instead provided probable cause to support the warrant, and the

officers who conducted the search reasonably relied in good faith on the warrant.[5] The Government

contends that the following facts in the affidavit support issuance of the warrant:

> • During the month of February 4, 2016, Adam Salinas . . . was stopped on a traffic
> stop by Dallas Police in the 2400 Block of Fabens Road, Dallas Texas. Suspect
> Salinas arrested and charged with Unlawful Possession of 2 firearms by a felon,
> Manufacture and Delivery of 727.7 Grams of Methamphetamine, and he was also in
> possession of $3,393.00 in US Currency.

> • ATF Special Agent Silverstrand . . . conducted a follow up interview with Suspect
> Salinas after his arrest. During the interview Suspect Salinas informed Agent
> Silverstrand that he sells illegal narcotics for profit. He also mentioned that he
> specifically uses storage Unit #2 located at 2458 Fabens Road, Dallas, Texas to
> facilitate his illegal narcotic distribution. Suspect Salinas also said that sometimes his
> customers pay him with firearms in exchange for narcotics. Agent Silverstrand filed
> a federal case against Suspect Salinas for his illegal possession of the firearms and
> narcotics.

> • On August 26, 2016, Detective Hibbetts observed Suspect Salinas leave the listed
> storage unit in his vehicle. Detective Hibbetts was following the suspect who was
> traveling at a high rate of speed in his vehicle that Detective Hibbetts determined to
> be unsafe. . . . The suspect was taken into custody at the apartment in Arlington,
> during his arrest detectives observed several firearm and drugs in plain view.

Pl.'s Resp. 20 (quoting Def.'s Ex. B). The Government further asserts that the information in the

affidavit was not "stale" as suggested by Defendant because Salinas was observed leaving the storage

unit the same day he was arrested. Pl.'s Resp. 20. The court agrees.

"[E]vidence obtained by officers in objectively reasonable good-faith reliance upon a search

warrant is admissible, even though the affidavit on which the warrant was based was insufficient to

establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing

*Leon*, 468 U.S. at 922-23). This rule, however, does not apply when a warrant is based on a "bare

---

[5] The Government refers to the storage unit located at 2458 Fabens Road, #22, as Salinas's "shop," which is
the term Salinas used to describe 2458 Fabens Road, #22 during his interview with SA Silverstrand on February 9, 2016.

bones" affidavit," that is, an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Satterwhite*, 980 F.2d at 320 (citation and internal quotation marks omitted). "Bare bones" affidavits typically contain "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321. "When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Id.* The amount of delay that will make information "stale" depends upon the particular facts of the case, and a judge's decision to issue a search warrant is "given considerable deference in the absence of arbitrariness." *United States v. Allen*, 625 F.3d 830, 842 (5th Cir. 2010).

The court has reviewed the affidavit in question, which was executed by Dallas Police Department Detective E. Barnes ("Barnes"), and concludes that it is not a "bare bones" affidavit or based on stale information as contended by Salinas; rather, the affidavit contains enough information for the state district judge who issued the search warrant to determine that there was a fair probability that evidence relating to Salinas's unlawful possession of firearms and controlled substances, as described in the affidavit, would be found in the storage unit. *Id.* at 840-43. Moreover, Barnes's affidavit and Walker's report both state that Salinas was observed by law enforcement entering and leaving the storage unit on August 26, 2016, the same date the affidavit was executed by Barnes and the storage unit was searched. This recent observation of Salinas visiting the storage unit combined with the information previously obtained by SA Silverstrand on February 9, 2016, regarding Salinas's stated illegal purpose for using the unit to facilitate his guns for drugs operation, provided sufficient probable cause to search the storage unit. The officers' reliance on the warrant was,

therefore, reasonable. Accordingly, the court **denies** Defendant's motion to suppress evidence seized from his storage unit on August 26, 2016.

### III. Second Motion to Suppress—February 9, 2016 Statements to ATF Agent (Doc. 34)

In his second motion, Salinas moves to suppress his statements made to SA Silverstrand on February 9, 2016, on the ground that the statements constitute inadmissible communications made as a part of plea negotiations. The Government responds that Salinas never spoke with an attorney for the Government, and thus Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11 applicable to plea negotiations do not render his statements inadmissible. The Government further asserts that Salinas has not shown that he exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and any purported expectation by Salinas was not reasonable under the circumstances. According to the Government, Salinas made voluntary statements to SA Silverstrand because he was seeking leniency in exchange for his being a useful "snitch," which is not an "exceptional situation" that would render the statements inadmissible plea negotiations. The court agrees.

Federal Rule of Evidence 410, which governs the admissibility of plea discussions or related statements, provides that "a statement made during plea discussions with an attorney for the prosecuting authority" is inadmissible in certain circumstances. Fed. R. Evid. 410(a)(4); *United States v. Fernandez*, 559 F.3d 303, 318 (5th Cir. 2009) (concluding that rule prohibiting admission of a "statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" was "inapplicable because [the defendant's] discussions were with government attorneys, not with law enforcement officers") (citing Rule 410(a)(4) and *United*

*States v. Keith*, 764 F.2d 263, 265 (5th Cir. 1985)); *see also United States v. Keith*, 764 F.2d 263, 265 (5th Cir. 1985) ("The rule, as amended in 1979, thus makes clear that the sort of plea bargain discussions that are inadmissible under it are only those had with a government attorney.").

As previously noted, Salinas had not been federally indicted at the time he spoke with SA Silverstrand, and the agent advised Salinas that he was not certain whether an indictment would be forthcoming. During his meeting with Salinas, SA Silverstrand also stated on more than one occasion that he was not an attorney for the federal Government and had no authority to make any promises or deals on behalf of the United States Attorney's Office. Salinas in response acknowledged that he understood that SA Silverstrand was an ATF agent or attorney for the federal government, and that SA Silverstrand had no authority to negotiate or make any kind of deal. Salinas nevertheless continued to offer information regarding his involvement and the involvement of others in illegal drug and gun activity in the hope of receiving favorable treatment if indicted. Because the statements in question were made to an ATF agent and not a prosecuting attorney for the federal government, they do not qualify as inadmissible plea negotiations under Rule 410. *Keith*, 764 F.2d at 266.

Morever, Salinas's statements do not "fall within any exceptional situation that might make plea negotiations with [someone] other than an attorney inadmissible," for example, when there are governmental misrepresentations, and a defendant "exhibit[s] an actual subjective expectation to negotiate a plea at the time of the discussion" and the "expectation was reasonable, given the totality of objective circumstances." *Id.* (citing *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); and *United States v. Posey*, 611 F.2d 1389, 1390 (5th Cir. 1980)). Neither of

these requirements is satisfied here. As noted above, SA Silverstrand repeatedly stated that he was not an attorney and had no authority to negotiate a deal or make any promises, and Salinas in response acknowledged that he had no such authority. Thus, Salinas's own statements negate any actual subjective expectation by him to negotiate a plea with SA Silverstrand and make any expectation by him in this regard unreasonable.

Salinas tried to convince SA Silverstrand that he was valuable to and could assist in the federal government's investigation and indicated that he thought it would be in both of their best interests if he could be released from state custody sooner than later without having to pay the high bond so he could assist with the investigation. He also stated that he hoped he could provide enough information to minimize his own role in the criminal activity and any sentence he might receive, but it is not entirely clear whether he was referring to a sentence that might be imposed in a state case or in the yet-to-be filed federal case. In response, SA Silverstrand reiterated that he could not promise anything and told Salinas that he would have to first "talk to [his] bosses" before any arrangements were made for Salinas to assist in an undercover capacity. Salinas expressed his willingness to assist by providing video tapes of his business but expressed hesitance and concern about assisting in an undercover capacity out of fear of reprisal by coconspirators. The meeting ended by SA Silverstrand and Salinas exchanging telephone numbers, but there was no agreed upon plan of action as to what would happen after Salinas bonded out of state jail.

While Salinas clearly wanted to make some sort of deal and was hoping to seek assistance to bond out of state custody, any expectation by him that his discussions with SA Silverstrand were made as part of plea negotiations was totally unreasonable, given the totality of the objective

circumstances under which Salinas made the incriminating statements to SA Silverstrand. Accordingly, the court concludes that the facts and circumstances surrounding Salinas's statements to SA Silverstrand do not support a finding of exceptional circumstances that would take this case out of the general rule that only plea negotiations with a prosecuting attorney are inadmissible. The court, therefore, **denies** Defendant's Motion to Suppress (Doc. 34) his statements to ATF Agent Silverstrand on this ground.

## IV.     Evidentiary Hearing

Requests for evidentiary hearings are not granted as matter of course when requested by defendants. *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). Whether a evidentiary hearing on a motion to suppress is required depends on the facts of a case that relate to a particular request, and district courts have a certain amount of discretion in deciding whether to grant or deny a request for an evidentiary hearing. *Id.* Here, no evidentiary hearing was requested by Defendant on his motions to suppress, and the Government contends that Defendant is not entitled to an evidentiary hearing. In addition, the Government specifically "requests that Salinas'[s] motion to suppress be denied without hearing," even though it has the burden of proof with respect to several of the grounds for suppression raised by Salinas. Pl.'s Resp. 25. Given that neither party has requested a hearing, and the Government has requested that the court rule on Defendants' motions without conducting a hearing, the court will rule on Defendants' motions based on its careful consideration of the parties' submissions without conducting an evidentiary hearing.

## V.    Conclusion

For the reasons stated, the court **grants in part and denies in part** Defendant's Motion to Suppress Evidence (Doc. 26); and **denies** Defendant's Second Motion to Suppress Evidence (Doc. 34).  Regarding Defendant's Motion to Suppress Evidence (Doc. 26), the motion with respect to the traffic stop and search of Defendant's vehicle on February 17, 2014, is **denied**; the motion to suppress with respect to the February 4, 2016 traffic stop and search of Defendant's vehicle is **granted**, and all evidence obtained during this search is **suppressed**; the motion to suppress Defendant's February 9, 2016 statements to SA Silverstrand is **denied**; the motion to suppress statements made by Defendant on August 26, 2016, and evidence seized from Defendant's apartment on August 26, 2016, is **denied**; the motion to suppress statements made by Defendant on August 26, 2016, on the ground that his statement regarding ownership of the contraband seized or any other statement by him was obtained by law enforcement while he was under custodial interrogation is **denied**; the motion to suppress evidence that was seized from Defendant's vehicle on August 26, 2016, without a search warrant is **granted,**  and all evidence obtained during this search is **suppressed**; and the motion to suppress evidence seized from Defendant's storage unit on August 26, 2016, is **denied**.

**It is so ordered** this 11th day of July, 2017.



Sam A. Lindsay
United States District Judge